**U**NITED **S**TATES **D**ISTRICT **C**OURT
**M**IDDLE **D**ISTRICT **O**F **F**LORIDA
**O**RLANDO **D**IVISION

**BIG E TRAILERS, INC.,**

      **Plaintiff,**

**v.**                                                                                                   **Case No:   6:14-cv-1528-Orl-31TBS**

**THE OHIO ANDERSONS, INC.,**

      **Defendant.**

## O**RDER**

This matter comes before the Court after a hearing on the Motion for Partial Summary Judgment (Doc. 36) filed by the Defendant, The Ohio Andersons, Inc. ("TOA"), and the Verified Motion for Partial Summary Judgment (Doc. 37) filed by the Plaintiff, Big E Trailers, Inc. ("Big E"), as well as the responses and replies filed by both parties.

### I.    Background

TOA is in the business of delivering liquid fertilizer to farms, using trailers equipped with large tanks.  Big E, among other things, provides maintenance and repair services for trailers.  In 2011, TOA and Big E entered into a four-year agreement (the "2011 Agreement") for Big E to maintain and repair TOA's trailers in exchange for a flat monthly fee of $325 for each trailer in TOA's fleet.  The parties had entered into a similar four-year contract in 2007 (the "2007 Agreement").  The 2007 Agreement differed in one material respect from the 2011 Agreement, in that it required Big E to replace the plastic tanks on many of the trailers in TOA's fleet with

fiberglass tanks.  It appears from the record that Big E installed at least some of the fiberglass tanks after the term of the 2007 Agreement had concluded.[1]

Several years into the 2011 Agreement, relations between the two companies became strained.  In April 2014, TOA informed Big E that it was terminating the 2011 Agreement.  In August 2014, Big E filed the instant suit, alleging that TOA had not properly terminated the contract but had, instead, committed a breach by failing to make the monthly payments due under it.  TOA filed a counterclaim, asserting that Big E had breached the agreement by failing to properly perform various tasks and therefore TOA's termination was proper.

By way of the instant motions, each side seeks summary judgment in its favor as to liability on the dueling breach claims.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56.   Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the burden of showing that no genuine issue of material fact exists.   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

---

[1] It should be noted that, although the 2007 Agreement is relevant to the instant dispute, no party has asserted a claim for breach of that contract – only the 2011 Agreement.   (Doc. 49 at 2).

- 2 -

citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### III.   Analysis

In pertinent part, the 2011 Agreement provided for the following:

> Big E shall perform all repair, maintenance, and rebuilding services (excluding tire supply and mounting) (the "Services") that are necessary in order to properly maintain all tanker trailers in the [TOA] Fleet at all times in good operating condition and in compliance with all federal, state, and local laws, rules, regulations or ordinances regulating the operation of such trailers, and to provide all parts and accessories required for the Services, except as otherwise specified herein. . . .   Big E shall provide, at its sole cost and expense, all equipment, labor, tools, parts and all other materials and supplies necessary to provide the Services, except as otherwise specified herein.   In addition Big E will provide preventative maintenance on the [TOA] Fleet.   The Services shall include, but shall not be limited to: mechanical maintenance, repair of tanks, suspension, brakes, air system, landing gear, pump, motor, and lights, performing sandblasting and refurbishing paint applications on the [TOA] Fleet within the Term of this Agreement[.]

(Doc. 36-2 at 2).

The 2011 Agreement, which had an effective date of October 1, 2011, provided that TOA could terminate the contract "for convenience" on any anniversary of that effective date by providing written notice at least 90 days in advance. (Doc. 36-2 at 2). The 2011 Agreement also provided that, if an "event of default" occurred, the non-defaulting party could exercise "any and all rights or remedies afforded by law or this Agreement." (Doc. 36-2 at 4). Of four different

"events of default" defined under Section 8 of the agreement, two are relevant to this dispute.

First, Section 8(b) provided that an event of default would occur if

> [a]ny covenant or agreement to be performed or observed pursuant to this Agreement by one of the Parties (other than a covenant respecting the payment of money) has not been performed or observed within thirty (30) days after written notice of such nonperformance or nonobservance has been delivered to such non-performing or non-observing Party; or, in the case of covenants or agreements which cannot be cured within thirty (30) days, if commercially reasonable steps toward the curing of such default are not taken within said thirty (320) day period and are not thereafter diligently and continuously pursued until such Default is cured.

(Doc. 36-2 at 4).   In addition, Section 8(d) provided that such an event of default would occur if

> Big E has failed to perform any obligation imposed hereunder, including but not limited to the Services, or has failed in any respect to provide the Services with promptness, diligence, skill, or in good workmanlike manner commensurate with the standard for the tanker trailer maintenance and repair industry, or with applicable laws.

(Doc. 36-2 at 4).

Finally, Section 25 of the 2011 Agreement provided as follows:

> In addition to all other rights specified herein, [TOA] shall have the immediate right to terminate this Agreement for cause should Big E fail to perform any obligations specified herein or fail to perform any of the Services in a manner consistent with this Agreement or reasonably prudent industry standards.   [TOA] will also have this right of immediate termination should any complaints or statements of claim be filed against [TOA] or Big E by any third party that are related in any way to the Services performed by Big E on the [TOA} Fleet.   If this Agreement is terminated prior to the expiration of the Term for any reason, Big E shall invoice [TOA] and [TOA] agrees to pay for, all Services performed by Big E up to the date of termination.

(Doc. 36-2 at 8).

### A.    TOA's motion

TOA argues that its termination of the 2011 Agreement was proper, and therefore it is entitled to summary judgment as to liability, because Big E breached the 2011 Agreement in four

ways: (1) by failing to provide required maintenance to many TOA trailers in February, March, and April 2014; (2) by failing to fix trailer crossmembers that had been modified by Big E when the fiberglass tanks were installed under the 2007 Agreement, and by failing to fix other problems resulting from those modifications; (3) by causing TOA trailers to be in violation of Department of Transportation compliance standards; and (4) by failing to provide copies of the maintenance records for the trailers upon TOA's request.   (Doc. 36 at 15).

TOA has presented evidence that some trailers were not repaired to its satisfaction, and that Big E did not meet some self-imposed deadlines for performing repairs requested by TOA. *See, e.g.*, Doc. 36 at 8-10.   However, Big E disputes these assertions, saying, among other things, that TOA sometimes requested repairs that were not necessary or contributed to delays by doing such things as dropping off trailers with insufficient or incorrect information about what repair needed\to be performed.   In any event, testimony that repairs – crossmember-related or otherwise – were not performed to TOA's satisfaction is not enough, on its own, to establish as a matter of law that Big E failed to fulfill its obligations under the 2011 Agreement.   Similarly, Big E disputes, and TOA's evidence is insufficient to establish, that Big E caused TOA trailers to be in violation of Department of Transportation compliance standards.   And the 2011 Agreement does not include a requirement that Big E maintain copies of the maintenance records for the trailers it worked on or provide those records to TOA upon request.   While the parties may, as TOA asserts, have established such an obligation through their course of conduct, the record does not support such a conclusion as a matter of law.[2]   As a result, the Court finds that genuine issues of material

---

[2] TOA argues that Big E provided copies of the maintenance records upon request under the 2007 Agreement, but does not provide evidence as to whether this occurred regularly or rarely, whether there were any previous occasions when Big E refused to provide the records, and the like.

- 5 -

fact exist as to each of TOA's four points, precluding the entry of summary judgment as to liability.

In addition, TOA spends a significant amount of time criticizing Big E's modification of its trailer fleet to replace the plastic tanks with fiberglass tanks.  (Doc. 36 at 5-8).   TOA argues that in doing so, it cut into the trailers' structural crossmembers – without authorization and without consulting the trailers' manufacturers – making the trailers unsafe, and that it breached the 2011 Agreement by failing to undo or repair these modifications.   But the tank installations were performed pursuant to the 2007 Agreement.   TOA has only asserted claims here under the 2011 Agreement.   As a matter of law, TOA cannot pursue any claim it might have based on those installations in this suit.[3]

TOA also argues that Big E suffered no damages as the result of any breach and therefore cannot prevail on a breach claim because Big E's owner, Earline Ford, admitted that the company was "performing the contract under a considerable financial loss".  (Doc. 36 at 24-25).   This argument is disingenuous, if not outright dishonest.   Ford actually testified that she had lost more than $700,000 on the 2007 Agreement but that she had been making a profit under the 2011 Agreement, such that her losses *for the entirety of her relationship with TOA* would have been reduced to about $84,000 if the 2011 agreement had continued for the entire four-year term.

---

[3] TOA attempts to argue that some of the tank installations and crossmember cutting took place pursuant to the 2011 Agreement (Doc. 36 at 6), but this is clearly incorrect.   Only the 2007 Agreement was concerned with tank installation.   Even if, as it appears from the record, Big E did not complete all of the installations until after the term of the 2007 Agreement had run, the installations (and accompanying crossmember modifications) were still being done pursuant to that agreement, because there was no language in the 2011 Agreement obligating Big E to perform any such installations.

(Ford Deposition, Doc. 36-4 at 105-09).   This is a far cry from her testifying, as TOA argues, that any breach of the 2011 Agreement did not cause Big E financial harm.

TOA's motion will be denied.

### B. Big E's Motion

For its part, Big E seeks summary judgment as to three points:   First, Big E seeks a judgment that TOA terminated (or attempted to terminate) the 2011 Agreement based solely on concerns that Big E was not properly providing regular maintenance and repairs, rather than concerns over crossmember repairs, the provision of maintenance records, or DOT compliance issues, as TOA asserts in its own motion.   Big E bases its argument on the testimony of Joseph Cherry, a general manager for TOA, who testified in various ways that he was the one who made the decision to terminate the 2011 Agreement and that, although there were other problems (such as the crossmember issues and the failure to provide records), he based the termination decision on Big E's failure to provide the regular repair and maintenance services.   (Doc. 36 at 6-7). However, TOA points to contradictory testimony, including the testimony of Cherry's superior, Joe Hodges, that the decision to terminate was made by a group that included Hodges and Cherry, and that the basis for the decision was not limited to one point, but included the failure to provide records and the dispute over the crossmember modifications and repairs.   (Doc. 49 at 20).   The Court finds that genuine issues of material fact remain as to this point.

Big E next argues that TOA's acceptance or approval of the trailer conversion work performed under the 2007 Agreement, combined with its failure to make a warranty claim under that agreement, should operate as a waiver or as some type of estoppel in this suit, preventing TOA from asserting any claims relating to defects in Big E's services, including the cross-member issues.   Although, as discussed above, TOA cannot assert a claim based on allegedly faulty tank

installation in this suit, this argument goes too far.  Under the 2011 Agreement, Big E was obligated to "perform all repair, maintenance, and rebuilding services … that are necessary in order to properly maintain all tanker trailers in the [TOA] Fleet at all times in good operating condition."  To the extent that a faulty tank installation eventually led to other problems, such as, for example, frame cracking or excessive leaks, TOA is not necessarily precluded from asserting that Big E breached the 2011 Agreement by failing to perform the repairs, maintenance, or rebuilding needed to remedy those problems.

Finally, Big E seeks a judgment that any termination of the 2011 Agreement on the basis of an (alleged) failure to comply with regular maintenance and repair issues was only permitted after TOA had provided written notice and 30 days to cure, and that no such notice or opportunity to cure was ever provided.  However, genuine issues of material fact remain as to the types of issues that led to TOA's decision to terminate the 2011 Agreement and the notice that TOA provided in regard to those issues, making summary judgment inappropriate as to this point.

Accordingly, Big E's motion will be denied.

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment (Doc. 36) filed by the Defendant, The Ohio Andersons, Inc., and the Verified Motion for Partial Summary Judgment (Doc. 37) filed by the Plaintiff, Big E Trailers, Inc., are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 17, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

Case 6:14-cv-01528-GAP-TBS   Document 79   Filed 12/17/15   Page 9 of 9 PageID 3064